DECEMBER.

HAFFNER'S Devisees vs. DICKSON'S HEIR.

The specific performance of a bond for conveying a tract of land decreed on a bill filed in 1792.

A decree in favour of the complainant, but without costs, was, on appeal by the defendant, reversed as to the costs, and affirmed as to the residue; and it was decreed that the compl't. should recover his costs in both courts.

APPEAL from a decree of the court of chancery. The bill was filed by the present appellee, (the complainant in the court of chancery,) on the 9th of July 1792, against *Frederick Haffner*, who died without answering the bill, and a bill of revivor was afterwards in May 1796, filed against his sons and devisees, the present appellants. The facts stated in the original bill, bill of revivor, and in an amended bill, are, that *Frederick Haffner*, on the 11th of May 1764, entered into a bond to *James Dickson*, the brother of the complainant, conditioned, that if *Haffner*, his heirs, &c. "do and shall well and truly convey and make over unto the above named *James Dickson*, his heirs, &c. by a good and sufficient deed, of one full half of the *Resurvey on the Discovery*, and now patented and called *Haffner's Choice*, on or before the first day of July next ensuing the date hereof, then," &c. At the foot of the bond, and before the signature of the obligor, it was thus written: "It is to be remembered, that, before signing and sealing, it is agreed, that out of the above tract 100 acres shall be laid off for *Daniel Maddes*, and then one half of the remainder is to be conveyed to *James Dickson*." That the land is called and designated in the bond of conveyance by a wrong name. That *Haffner* originally, on the 10th of November 1752, obtained a grant for 45 acres of land, call-

1806.

Haffner
vs
Dickson

ed *Havanaer's Discovery.* That a warrant afterwards issued on the 1st of February 1760, and renewed on the 22d of September 1761, to resurvey the land under the name of *Haverner's Discovery.* That a certificate was returned, dated the 10th of December 1761, and patent issued to *Haffner* for the land by the name of *The Resurvey on Havencar's Fancy,* on the 29th of September 1762. That by the table of courses annexed to the certificate of *The Resurvey on Havenear's Fancy,* it appears that *Haverner's Discovery* was the land resurveyed; and by the rent rolls it appears that *The Resurvey on Havanor's Fancy* was originally called *Havanor's Discovery,* and contained 45 acres. That the land patented under the name of *The Resurvey on Havenear's Fancy,* and the land which *Haffner* obliged himself to convey by the bond of conveyance, is one and the same tract of land, and not different. That *Haffner,* being seized and possessed of the land, came to an agreement with *Dickson* relative to the sale of a moiety of the same, deducting 100 acres, and that *Dickson* paid the full amount of the purchase money agreed on, and in consideration thereof, *Haffner* executed the bond to convey the moiety to *Dickson* in fee simple. That *Dickson* died, after the payment of the purchase money, and the date of the bond, in possession of a moiety of the land, and left the complainant his heir at law, who is in equity and justice entitled to a conveyance thereof, pursuant to the bond. That *Haffner* is since dead, having by his will devised the land, of which the complainant claims part, to his sons, the defendants, in fee simple, as tenants in common, &c. *Prayer*—that it be decreed that the defendants convey a moiety of the land. according to the bond to the complainant, in fee simple, together with such further and other relief in the premises as complainant's case may deserve, &c. The *answers* of the defendants state, that their father did own a tract of land called *Havenear's Discovery,* but no warrant of resurvey was obtained by him to resurvey that tract; but it was to resurvey *Havenar's Fancy,* and under that warrant a survey was made, a certificate returned, and a patent granted to their father, for a tract of land called *The Resurvey on Havenear's Fancy,* containing 695 acres, of which their father was seized and possessed until his death; and since his death the defendants have been in the seizin and possession, and are now seized and possessed

thereof. That they were not privy to the contract entered into between their father and *Dickson*, and only know what land he sold to *Dickson*, if any, from the papers exhibited by the complainant; and they do not know, nor can they admit, that it was any part of *The Resurvey on Havenear's Fancy*, for the conveyance of which the bond was given. That they understood from their father, that having executed a survey many years ago, he included more land therein than he thought himself able to pay for in the land office, and therefore agreed with *Dickson* to let him have half the land so taken up, provided he would pay half the caution money, and other expenses attending the securing and making perfect the title to the same. That they often heard their father say, that it was in consequence of this agreement, and upon no other consideration whatsoever, that he passed his bond to *Dickson* for the conveyance of certain lands in the bond mentioned, but which bond they have never seen. That they have been informed, &c. that when the certificate of survey for the land thus contracted for was returned to the land office, *Dickson* was either unable or unwilling to pay his proportion or dividend of the expenses necessary to secure the land; and that their father was compelled so to do, and did actually make sacrifices to borrow and procure the money to secure the land, and did actually pay for the whole himself; and that their father never did receive from *Dickson* any valuable, or other consideration, for the bond which he executed in manner aforesaid. That they have also understood from their father, that no writing of any kind ever passed to him from *Dickson*, respecting the land; that their father, being an illiterate man, and reposing great confidence in *Dickson*, took no writing from him on the business. They do not believe that *Dickson* ever had possession of any lands whatsoever in consequence of the bond; on the contrary they have been informed, &c. that *Dickson*, well knowing he was not entitled to have a conveyance, &c. never did, during his whole life time, ask their father to convey, &c. They insist upon the act of parliament, or statute of limitations, made in the 21st year of the reign of King *James* the I. and pray the benefit of that act. That after the great length of time which hath elapsed since the execution of the bond, and before any bill filed to obtain a specific performance thereof, they are informed the complainant is not

entitled to relief, and they rely on the said length of time to bar the complainant of the relief prayed, and pray to have the benefit thereof at the hearing, as fully as if they had pleaded the same, and relied thereon by way of plea, &c.

*Commissions* were issued, and *testimony* taken thereunder, proving the hands writing of the witnesses to the bond, who were dead. That a warrant of resurvey was taken out on the 27th of November 1784, in the joint names of *Haffner* and *Dickson*, at their request, to resurvey a tract of land called *Heffner's Fancy*, but which was not executed. That the complainant was brother and heir at law of *Dickson*. That in the year 1784, on executing a commission to perpetuate the bounds of the land called *The Resurvey on Havaner's Fancy*, issued by and in the name of *Frederick Havaner*, the complainant claimed a conveyance for his share of the land of *Haffner*, according to the bond which he exhibited to *Haffner*, executed by him to *Dickson*; that *Haffner* acknowledged it, and said *Dickson* had paid all the money that could in justice be demanded of him for his part of the land. That *Haffner*, in stating objections to his conveying the land, said he had paid taxes on it. That as there was some dispute about some part of the land, and as it was intended by both to sell, it was finally agreed to wait the result of that dispute. That at another time the complainant called on *Haffner* for a conveyance of one half of the land *Haffner* then lived on, who alleged he had paid taxes, &c. as much as he thought the land was worth. That complainant proposed to make him payment for all the money he had advanced on the land, on his making a conveyance, which *Haffner* refused to do. That *Haffner* admitted that the land he lived on was the land the complainant was entitled to, if he was entitled to any, and is the same land mentioned in the bond of conveyance, and that it is a tract of land called *The Resurvey of Havenear's Fancy.* That *Haffner* afterwards promised to settle the business in a peaceable manner as soon as he settled some dispute about the land with one *Shehawn.*

HANSON, Chancellor, (July 19th, 1803.) This cause coming on to be heard, was most ably debated by the counsel on each side. The Chancellor has never heard a cause which appeared to him more difficult to decide, so as to secure an affirmance by the court of appeals. However the

1806.
Haffner
vs
Dickson

Chancellor may differ in sentiment from that tribunal, he has always considered it his duty to determine according to their known opinion. But in various causes, which have been carried to that tribunal, and in which the question was, whether or not an agreement respecting land should be enforced, they have decided, without laying down their principles for the future government of the chancellor. In the present instance, if he could divine how the court of appeals would decide, he would certainly decide accordingly, as indeed he would in every other case. Sometimes it has appeared to him that the court of appeals has considered it proper to enforce almost any agreement whatever. At other times it has appeared to him that they have adopted a strictness beyond any thing to be met with in the books.

That the agreement which *Dickson* prays this court to enforce, is uncertain, and that it has lain so long dormant, as to have no title, agreeably to established principles, to be enforced, has been contended on the part of the defendants. It is also on their part contended, that there is no sufficient proof of its having been performed on the part of *James Dickson*, under whom the complainant claims. If the defendants are right, the complainant is not entitled to relief. But the complainant denies every allegation, and the parties are at issue upon them.

It has always been a practice of the Chancellor, and he probably will always consider it right, where a cause is doubtful to himself, where his decision, whatever it may be, is in his own opinion just as likely to be reversed as to be affirmed, and where he can propose such a compromise as appears to him likely to coincide with the judgment of honest sensible arbitrators, chosen by the parties, it has always, in such cases, been his practice to propose that a decree pass by consent, which shall at once end all controversy.

In the present case he proposes that the parties agree, by writing here filed, that a decree pass to the following effect: 1. That each party bear his own costs. 2. That the defendants convey to the complainant two thirds of the land in question; that is to say, two thirds of what the complainant claims; or that the said land be sold by a trustee, appointed by the Chancellor, who shall act under the Chancellor's control, and report his sale, which shall not

be valid until ratified by the Chancellor, and who shall receive a commission as in similar cases; and that the nett proceeds shall be divided between the complainant and the defendants, two thirds to the complainant, and the other third to the defendants. 3. The complainant shall release to the defendants all claim to profits on the land by him claimed.

The Chancellor requests that a copy of this recommendation be served by the complainant on the defendants, unless he, (the complainant,) disapproves of it. If he shall declare in writing to the Chancellor his disapprobation, or if the defendants, on being served, shall not, within one calendar month after service, express their approbation, the Chancellor will proceed to decree to the best of his judgment. The complainant is requested to decide as early as conveniently may be.

Hanson, Chancellor, (August 1st, 1803.) The complainant having by his petition to the Chancellor, and filed in the cause, agreed to waive all right to a decree to account for the rents and profits of the land in controversy, reserving to himself all right and equity to an account of those rents and profits in any future bill for an account for the same, *Decreed*, that the defendants shall forthwith, by a deed or deeds of bargain and sale, to be duly executed, acknowledged and recorded, convey unto the complainant, and his heirs, as tenant in common, one undivided moiety or half part of, in and to, all that tract of land in *Frederick* county called *The Resurvey on Havenear's Fancy*, which was originally granted unto *Frederick Havenear*, now deceased, by patent bearing date on the 29th day of September 1762; provided always, and liberty is hereby reserved unto the complainant, to file a new bill or bills against the defendants for an account of the rents and profits of the said land; and also reserving to the complainant all equity which he now hath or may have to an account of the said rents and profits; the Chancellor so decreeing, because the complainant hath filed a writing to that purpose, and the Chancellor, therefore, being excused from giving any opinion on the subject of profits. Also *decreed*, that the defendants and the complainant shall each bear his own costs in this suit expended.

In decreeing thus, the Chancellor flatters himself, that he pursues the opinion of the court of appeals, or rather the principles which must be supposed to have governed them in the late case of *Browne vs. Browne, (1 Harr. & Johns.* 430;) and he takes the liberty of referring to his own recommendation in this court filed, which, as he was informed by the complainant's counsel, would be rejected by the complainant.   He repeats, that in decreeing, as he does, he conceives that he pursues the principles which governed the court of appeals in the recent cause of *Browne vs. Browne,* in which his decree was reversed. He may be mistaken with respect to those principles, which indeed the court of appeals has not explained; but he flatters himself that the important tribunal of the court of appeals, on reflection, will perceive the propriety of always explaining the grounds on which they reverse a decree, in order that the Chancellor may in all future causes obey them, as his duty requires him to do.   It is notorious, that in many causes a variety of points of law and equity are disputed between the parties; a simple affirmance or reversal does not, cannot inform the Chancellor on which of the points they have decided the cause.

From which decree the defendants appealed to this court, and the cause was argued before Chase, Ch. J. Buchanan, and Gantt, J.

*Johnson,* (Attorney General,) for the appellant, contended, 1.  That it was not a matter of course to decree a specific performance of a contract.   He cited 2 *Pow. on Cont.* 221, 233, 242, 2 *Vern.* 415. 2 *Com. Dig.* tit. *Chancery,* (2 C. 16.) *Buxton vs. Lister,* 3 *Atk.* 383.   2.  That the length of time, before the application for relief, ought to prevent its being granted.   He referred to 2 *Pow. on Cont.* 260.

*Key,* for the appellee, in his argument cited *Peake's Evid.* 56, 57.

The Court of Appeals, *Decreed,* "that the decree of the Chancellor, so far as the same relates to the costs in the court of chancery, be and the same is hereby reversed; and that the appellee recover against the appellants the costs by him expended in the court of chancery."   Also

decreed, "that the residue of the said decree be and the same is hereby affirmed, except so far as the said decree operates to compel the appellants to convey any interest in the one hundred acres of land to be laid off for *Daniel Maddes*, mentioned at the bottom of the condition of the bond executed by *Frederick Haffner* to *James Dickson*, dated the 11th of May, 1764, and exhibited in the bill filed in the cause; and as to the said one hundred acres of land, the said decree is reversed."

"And for the purpose of carrying this decree into effect," it was further *decreed* "that the Chancellor pass a decree, thereby directing the appellants forthwith, by a deed or deeds of bargain and sale, to be duly executed, acknowledged and recorded, to convey unto the appellee, and his heirs, as tenant in common, one undivided moiety or half part of, in and to, all that tract of land, lying in *Frederick* county, called *The Resurvey on Havenear's Fancy*, which was originally granted unto *Frederick Havenear*, now deceased, by patent, bearing date on the 29th day of September 1762, except one hundred acres of the said land, stated on the bond of conveyance executed by the said *Frederick Haffner* to *James Dickson*, dated the 11th of May 1764, and exhibited in the bill in this cause, to be laid off for *Daniel Maddes*; and the deed or deeds, to be executed in pursuance of the said decree, to contain an exception as to the said one hundred acres. And by the said decree the Chancellor shall direct the said appellants, to pay to the said appellee, the costs in the court of chancery." And it was further *decreed*, "that the appellee recover against the appellants the costs by him expended in this court."